Good morning. I'm Tom Burke. I represent Phil Johnson, the appellant. Summary judgment was inappropriate in this case for multiple reasons that I have set forth in our briefs and that I want to address here today. There are some compelling, undisputed facts that alone might have justified the denial of summary judgment. This policy was paid for with premium never having been returned. Coverages were extended in a couple of different fashions under this policy. Assurances were made by American Casualty's agent before the accident that the coverage was in force on this particular vehicle. Now, the district court made a few, quote, findings, which our position is that that is not the proper role at summary judgment phase, that the findings are for the jury to make after presentation of all of the evidence and argument from counsel. When we look at the contract issue, there are two elements that went through the trial court's analysis. One was ownership and one was permission. I'm going to start with permission simply because I think it's the easiest one to dispense with. It also, coincidentally, is the first one that is raised in the policy itself. The district court, relying on a case that neither party had cited, an Ellison case, took a view that is contrary to virtually every other case that has looked at the permission issue in a context like this. Well, frankly, let me back off that statement, because virtually all of the cases that have been cited in both our briefing and American Casualty's briefing on a permission issue involve some prohibition on permission. That didn't exist in this case. I assume the Court knows the facts. V&C Construction and Mr. Van Winkle are essentially the same. Mr. Van Winkle, sure. May I interrupt you on that point? I mean, that's one point of a little bit of confusion for me, and I'm not sure it makes any difference, but how do you get a truck in a divorce proceeding when the truck is owned by the corporation? I mean, she's not divorcing the corporation. Well, that's right, and that is one of our points, Your Honor, that American Casualty's position, even to this Court, at page 17 of its brief, repeatedly in the same sentence tells this Court that the divorce decree transferred ownership on a particular date, nearly 10 months before the accident. Well, that's not – that can't be. V&C, the name insured, can't try to say what that divorce decree did with respect to ownership. And therein lies the first disputed fact issue, because even the district court didn't accept V&C's, excuse me, American Casualty's position on that. American Casualty's position is that the divorce decree, which you're questioning it, but that's their position. That's when it was done, was through that divorce decree. So what's your position on that? Was – title wasn't transferred until when and for what consideration? It wasn't – it was not transferred before this accident. When you look at the evidence that – in the way that we're all supposed to look at it at a summary judgment standard and stage, that Mrs. Van Winkle's testimony establishes, and it's consistent with other aspects of that divorce decree, that that – that she was not going to take title to that vehicle until September of 2005. The accident was in April of 2005, months before the intended transfer of title. There was a fortuity that we address in the – in the pleadings and in the briefing on the paper transfer before that date. But that's also what triggered Ms. Van Winkle turning to her – the American Casualty's agent, Janie Ferguson, to make sure that the coverage did indeed exist on the vehicle as was paid for, as was listed, as was agreed to in the divorce proceedings, that VNC would continue to make – maintain the insurance on this vehicle so that this vehicle would comply with mandatory liability insurance law. This is a case, unlike virtually any that I have ever seen in my years of doing insurance companies, where the company takes the position that even though premium has been paid for and never returned, and that there are some coverages, we can restrict the most required one under law, which is the mandatory liability insurance. And this case differs in virtually any that I have been around where the insured reaches out to make sure that that coverage, because of that fortuity that I referred to, it reaches out to make sure that the – that that coverage is there, that there has not been a snafu. If you accept American Casualty's position, this vehicle was bare. It was naked of liability coverage from the day of that divorce decree. And Judge Thomas, your question is, how does that happen? But that's the position that they're taking, that it was bare as of June, early June 2004. And the district judge took the position that, well, no, I'm going to make it bare in January of 2005. Who was the insured under the – the insured? Who was the insured? The named insured is VNC Construction. VNC Construction was a family business. And what we learned from Janie Ferguson, the agent, is that the way Mr. Ferguson – excuse me, Mr. Van Winkle operated that business was he bought vehicles for his family. And it's not different from many other circumstances where somebody owns – has a family business and has multiple vehicles. And the agent knew about this. And if I can add this additional fact – am I interrupting a question? If I may add this additional fact to make sure that we're all on the same page on this, that policy inadvertently deleted, after the divorce decree, inadvertently deleted the subject truck in September of 2004. Janie Ferguson picked that up. Janie Ferguson is American Casualty's agent, knows the Van Winkles, knows of the divorce, and decided it was wrong that that vehicle was deleted from the policy and gets that put back on the policy in November of 2004 with a retroactive date back to September so that, unlike American Casualty's position, which is that vehicle was bare of the mandatory liability coverage from June of 2004, the American Casualty's agent took the step and American Casualty's underwriter agreed to reinstate back to September of 2004 so there was no lapse in coverage. And the only lapse in coverage then starts when the district court incorrectly ruled, as a matter of law, that mandatory liability coverage stops in January when, by fortuity, the paper title is tendered to Ms. Van Winkle, contrary to the agreement of the parties. Did Ferguson know about the title transfer in the divorce decree? I don't fully understand your question. I can answer it. It says that when the divorce became final that it said that she'd get the truck. It sort of says that. It sort of says that. What it says, it has a list of the property and she will get the truck. It does not have a date in that divorce decree. There is not a document. When did the divorce become final? The settlement agreement is June of 2004. And American Casualty's position is, based on reading one sentence out of that settlement divorce decree that deals with the willing of property, that based on that one sentence, that is when the truck transfer title. The district court didn't even accept that. If the district court didn't even accept that, then we do have a question as to, well, what is the date? It's not the date that American Casualty is representing to you. The district court takes a different date and neither of those dates is the date that the party, one of the parties to the divorce decree, said it was going to be, which is in September of 2005. Counsel, Judge Gould, if I could interject a question, please. Could you just try to state succinctly what your best theory or argument is that as of the date of the accident, there was an issue of fact whether the construction company still owned the car? Could they own it beneficially if not, if the title was transferred? Did that invoke coverage? I think I have three best points to you. Number one, the testimony of Claudia Van Winkle, who was the exclusive possessor of that vehicle from the day that it was purchased and was the beneficial insured, if you will, to flip your question a little bit. Her testimony establishes that the ownership was by V&C until September of 2005. Number two, the policy does not limit the liability coverage to ownership. It doesn't do that. Number three, we go into the estoppel position, which is that there was the assurance that this vehicle would be insured, and I realize your question is on the ownership, but I think it's a natural segue, Your Honor, to go into the estoppel argument on that. Well, this gets very confusing. I thought the provision of the insurance policy that we're talking about here, the permissive usage, means that she wasn't driving the car. That's true. She gave permission to someone else to drive it. That's true. Your position is that the corporation didn't give permission and the husband didn't give permission, so I don't know. That's not true. That's not true? That's not true. What isn't true? Neither of those statements that you make. Corporation gave permission? They gave the permission from day one to Claudia Van Winkle. Claudia Van Winkle. I'm talking about the driver. Who gave permission to the driver? Well, I'm going to reserve some time. I will obviously answer your question. If your question is did V&C give permission directly to Mr. Ryan, the answer is no, but the corollary, the follow-up to that is that doesn't matter. That is not the basis on which liability insurance is evaluated under virtually any case. I think your theory was Claudia has permission to use the car. You gave permission to the driver. That's enough. That's part of it. That's definitely part of it. I mean, in the simplest form, under virtually every permission case, Your Honor, it is that. I mean, it is permittee to permittee. If I live in Arizona, if I give to my daughter a car to go to school in California and she lets her roommate use that car, my coverage extends to that. I understand that. I just may have misunderstood you. Okay. If I may, I would like to reserve that time for rebuttal. We'll give you two minutes for rebuttal. Thank you. Good morning. John Cardisakis representing Appalachian American Casualty Company of Redding, Pennsylvania. I think an important point to keep in mind here is that the liability coverage issued to VNC Construction, Inc. only promised to defend and indemnify and insure. There's no promise to defend anyone who is not an insured. And the problem Appellant has is that as a matter of law, Mr. Ryan was not an insured under the American Casualty Policy. But under the policy, counsel, if I could ask this, don't they agree to indemnify someone who has permission from the insured to drive? The language, Your Honor, would extend insured status to someone who drives a vehicle with the permission of the insured, a vehicle that the insured owns. So there's at least two requirements there. They have to have the permission of VNC to drive the vehicle, and it has to be a vehicle that is at that time owned by VNC. The district court correctly found that neither of those were met here as a matter of law. Okay, what is, in response to Appellant's argument about his best theory that the title hadn't, there's an issue of fact on whether the ownership had transferred before the accident. What's your best argument to say that it had transferred? And moreover, to say why you think there's not an issue of fact on the transfer of title raised by the Declaration of Claudia? Thank you, Your Honor. Let me just preface it by saying generally in a diversity action, it's going to be the apply the one issue where we say Nevada law controls has to do with who owned this vehicle. So part of my point here is Nevada law controls regarding who was the owner of the vehicle at the time of the accident. And I believe the district court was required to and did correctly accept the judgment of the Nevada court, which was entered in June 2004, which finally adjudicated that it was Mrs. Van Winkle who was the owner of that vehicle. So when the accident happened many months later in April 2005, as a matter of law, Mrs. Van Winkle was the owner of the vehicle at that time. V&C was not the owner of the vehicle at that time. When you refer to the state court, which proceeding is that in where this was adjudicated? It's in the marital dissolution proceeding, Your Honor, between the two Van Winkles. The judgment is part of the record. It was entered on June 9, 2004, I believe. Okay. And that's my point. Basically, appellant's argument is I understand. But then I think the difficulty you have is that your agent added it back into the policy later. In other words, after the divorce decree, after ownership had been transferred, your agent then in November of 2004, if I've got the time right, goes back and said, no, this needs to be on the corporate policy, and goes back and gets permission to then reinsure it. Is that true? That is true, Your Honor. But let's not gloss over the fact that the policy provides different types of coverages. And what appellant's theory depends upon is application of the liability coverage. Yes. It's not disputed here that there was a collision claim, that the collision claim was paid. No one's saying that American Casualty took the position that the vehicle was not on the policy at the time of the accident. And there may well have been an argument we could have disputed whether we had an obligation to pay the collision coverage because we were unaware of the transfer at the time. But we didn't. I mean, to the extent you rely on the transfer, wouldn't that apply to the collision coverage, too? No. Because unfortunately, not unfortunately, when you look back at the collision coverage, the insured has a much better argument that they're entitled to collision coverage whether or not they still owned the vehicle at the time of the accident. And in any event, we didn't know about the transfer. But that's not the issue before the Court. The issue before the Court, I believe, relates exclusively to the liability coverage. It's the collision. It's the physical vehicle itself. Damage to the vehicle. Yes, Your Honor. Which was paid. And everyone agrees it was paid. And that doesn't help. So the insurance company accepted the premium and they listed the vehicle with the  liability claim by the person who got permission from their, I don't know if there's a word, permittee or whatever. But in other words, Claudia had permission from them to use the car. And she gets permission to ride. Why isn't that like the question I think Judge Thomas poses or somebody posed, that if you give permission to your daughter to drive a car at college and she loans it to someone else, then there is coverage. So why isn't that the case here? Okay. So now we've moved over from ownership to the permission issue. There's no authority that appellants cited or that I've been able to independently find that would suggest that if I own a vehicle and I transfer it to you, Your Honor, and you let someone else use it, that I'm deemed to have given permission to the person who you loaned it to. Once I no longer own the vehicle, I don't have the ability to control what you do. That would probably depend on the scope of the permission you gave me, I suppose. No, because if you're the owner, you don't need my permission. I could say absolutely not. You can't let Bill use it. But if you own the vehicle. But if I'm not the owner and if the construction company is the owner, but they give Claudia that permission to use the car, isn't there a question of the scope of the permission they gave? Like whether it extended to loaning it to anyone else or just for her personal use? After the divorce judgment, the vehicle was Claudia's. Right. Your argument all gets back to ownership. Let's forget ownership. Let's presume ownership retains in the corporation. All right. Then get back to Judge Gould's question. If the ownership retains in the corporation, assuming hypothetically, Claudia has permission to the corporation. If she gives permission to somebody else, why don't you think that's covered? Because it wouldn't be permission from V&C. But I guess I wouldn't. Why wouldn't it be a factually? You obviously object to the idea that I'm not understanding any theory. The appellant hasn't suggested any theory that I'm aware of, how we ignore the Nevada court judgment that the corporation didn't own the vehicle. You say there are two issues, ownership, permission. Yes. Let's leave ownership aside. I don't understand under your policy why there isn't an issue of fact on permission, because it ensures an insured and named insured and anyone else using with your permission. So you have an employee who's using with permission the corporation and she allows someone else to drive it. Claudia wasn't an employee. Well, no, no. I'm asking, leaving aside, assuming that she has permission, we have the first link that she has permission to use the auto. What's the evidence of that, Your Honor? Excuse me. It's hypothetical. I want to peel this back one layer at a time so I understand your theory, because you keep, your logic keeps getting circular. She didn't own it, she didn't. You want to dispute the factual and not hypothetical. I want to understand the legal theory. If she has permission validly from the corporation to use the vehicle and she gives permission, do you concede that that would be covered? No. I do not concede. Why? There's no basis to say that V and C. The legal question is did V and C give permission? Now, Appellant has cited many out-of-state cases that suggest that under some circumstances where an insured gives permission to someone, there can be implied permission. But none of those factual scenarios are anything close to what we have here. But all the cases you cite, and I think they're correct on this, involve policies that have more restrictive language. Your policy says you or the insured or anyone with your permission. Now, Ray is the corporation, basically. If he allows Claudia to drive it and she allows someone else to drive it, again, leaving aside the ownership, leaving aside permission from Ray to Claudia. If you assume all that, why? I don't understand your position that that wouldn't be a factual issue, precluding summary judgment on a coverage question. Well, because I guess I'm not sure I'm going to be able to give Your Honor a satisfactory response. I don't see any evidence that would support either of the links. I don't see it. Okay. You know, we're not communicating in the sense that I want to take this little bit by bit. I understand your factual arguments. But you seem to be saying that if we assume that Claudia had permission and she gave permission to the driver, that that would not be a covered event. And I don't understand your answer with those two assumptions, that it would not be a covered event. Well, it would still be my position that wasn't permission from V&C. My permission is my position. It would have been the situation before the divorce, isn't it? When V&C owned the vehicle. Uh-huh. And she was driving it with the permission of the insured and she gave it to someone else to drive, that it would have been covered. Assuming no contrary instructions to her, yes, I would concede that. So why did you answer exactly the opposite to Judge Schreuer than you did to me? I don't understand your position. Well, I think it's you're disputing the hypothetical, but that's just a hypothetical. I mean, I think it's, to me, I think there's a genuine issue of fact on coverage if, and if we assume Claudia has permission and Claudia gave permission, that there is a fact on coverage. And you say no. In response to Judge Schroeder's question, I believe I added that, and if there were no contrary instruction from the corporation to Claudia. Yeah. That which was not, I perhaps misunderstood if that's something that you were building into your question. I saw a difference between the two questions. Okay. Counsel, I've got another, I have another question, but I'll defer if Judge Schroeder wants to proceed. Okay. Here's my question. I think that the appellant argued that the divorce decree, which said she's going to get the car, had no effective date she would get the car. So maybe I misheard that, but I thought that was appellant's argument. So that if that's true, if the property settlement agreement just says, well, he'll get this, she'll get that, but it doesn't specify a date that they'll get it, then is it possible that the State court judgment on the divorce would not bind the court here as to the ownership of the car on the date of the accident? Like you, I did hear Mr. Burke make that argument. That argument is inconsistent with the language of the judgment which incorporates the marital settlement agreement, which provides that ownership of the assets transfer immediately. So, yes, appellant has made the argument that there was no date provided for the transfer. But when you go back and look at the marital settlement agreement, as we've quoted in our brief, Your Honor, there is language that the transfer is immediate, and that was incorporated into the Nevada court's judgment. So how can you, getting back to the first question I asked your opponent, I mean, you can't divorce a corporation. How did he have the power to transfer the title in a divorce decree? He was the president of the corporation. He was the sole owner of the corporation. He had the ability to transfer those assets. No one is challenged at any level, certainly not in the district court in connection with the proceedings here. No one's challenged at any level his ability to agree to transfer to Claudia. So when we're talking about the distinctions between the corporation and what was his name? Mr. Van Winkle? Mr. Van Winkle's. Really, there's no difference functionally, is there? Well, with respect to who owned the assets, there's not. Well, I mean, if you say, look, he had the power to control the car for the purpose of the divorce decree, then he had the power to control the title post-divorce decree, right? I mean, in terms of the transfer, permissions, everything else. He spoke for the corporation. I would agree that the President, Mr. Van Winkle, had authority to speak for the corporation. Yes. I guess I don't know that I finally finished the loop on responding to Judge Gould's earlier question. You know, what's my analysis regarding plaintiff relies on the deposition testimony of Claudia Van Winkle where she says she had an understanding that the transfer wasn't going to occur until September of 05. And my response is that her understanding doesn't trump the district court judgment and doesn't trump the written marital settlement agreement that both say just the opposite. So I do not see a tribal issue of fact there. No reasonable trial of fact could disregard the district court judgment, disregard the language in the marital settlement agreement that the transfer is immediate, and parenthetically, that agreement has an integration clause. Mr. Gardner? I think I understand your view on that. Well, you know, what bothers me about this case, from the insurance company point of view, are the two of the factual elements. And it's hard to see where doctrinally they fit in. But the one element being that CNA, or not CNA, that American Casualty paid the element concerning the discussion that Claudia had with the agent Ferguson, whatever else that conversation means when you nitpick it, seems like she was communicating that she wanted the car to be covered. And she gets a sort of a positive response, it seems, in the sense that, well, you can't have it covered in your name now, but it's in the corporation. So am I misreading that colloquy? Well, clearly she misled the agent as to the true state of the facts. There's no claim that, based on what she related to the agent, that the agent made any misrepresentation to her. And the fact is the district court correctly found. There's no evidence of a misrepresentation by the agent. But when we have these subtle issues on so many of these theories, would they be more rationally – this is sort of a trick question, so I think I know your answer. But would they be more rationally determined if there were findings of fact on which to peg the legal theories on? My answer, obviously, is there is no evidence which would support a finding of fact contrary to what has already been found here by the district court. There is no evidence that would support the application of waiver here. There's no intentional relinquishment of a known right. There's no evidence that would support the elements required for a stoppel here. Okay. Your time has expired, more than expired. Do you wish to follow up, Judge Golden? No. I think counsels – counsel on both sides have done good jobs of answering my questions. Thank you. Thank you. Thank you, Your Honors. Paul has a little time left. Now, during your time, could you address your opponent's argument that the divorce decree or separation agreement entered by the State court provides for an immediate transfer of the property? Well, of course I cannot do that because it doesn't do that. If you turn to excerpt of the record, page – excuse me, 25, page 124, property and debts, the parties acknowledge and agree that the value of any asset or liability may increase or decrease prior to the time of actual distribution. That's a provision that's in the record that we cited to you that is part of the district court record that American – Another date for distribution? When the decree became final, she had the car, didn't she? The truck, whatever. She had the truck from the day it was bought. Right. I mean, so in terms of the – Well, was there some act contemplated other than the finality of the decree? Yes. Okay. And that was in September of 05. September of 05, which would be after this accident, was when the vehicle was intended to be paid off at that time, and at that time there would be the transfer of ownership. And you have to accept that testimony from Claudia Van Winkle, that that's the situation. What do you make of the provision of the decree that says that each party has the right to dispose of the property immediately that's listed? I think the vehicle's included in that. They have the right to do that. Yeah. But they didn't do that. The district court didn't even accept that. No, I understand the district court didn't do that. But I think your opponent's argument, if I'm understanding it correctly, is, look, under the divorce decree, which is entered as a judgment, whatever property was listed, the party had the right to dispose of it immediately under the decree. Now, I understand your legal argument, but if we're just talking about the decree, why isn't that sufficient to transfer whatever rights there were? Well, it doesn't – this divorce decree doesn't execute it. For example, I don't do divorce work, but I generally understand that if I'm getting divorced and I don't give you the title, then you've got to go back in the court and do something about it. So this is not going to – Well, why couldn't you – I mean, it seems to me the arrangement here was I'm going to transfer whatever interest I have. We understand that GMAC has a loan out on it, and we've got to pay off the lien, and the lien's – GMC has the paperwork with the corporation. That's right. We're not going to go through the trouble of substituting, of doing an ovation on the debt. So we're just going to – you're going to keep paying it off, and when we finish, you're going to get the title transferred. But I think the argument on the other side is effectively whatever right title interest the corporation had equitably in the vehicle transferred at the time of the decree based on that provision. Number one – number one, you said you understood my legal argument. I've got a factual argument obviously there, too, because that's – the factual argument is that with respect to that vehicle, that was not the intent of the parties. And the intent of the parties is borne out by Claudia's testimony and, frankly, is borne out as well by Mr. Van Winkle's testimony. It is supported by their own agent's testimony wanting to make sure that that vehicle gets put back onto the policy to make sure that there is this mandatory coverage out there. Okay. Very good. Thank you. Thank you. The matter just argued is submitted for decision. That concludes this Court's calendar for this morning, and the Court stands adjourned. All rise.
judges: Schroeder, Thomas, Gould